DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1888.

---

## THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON v. WILLIAM BUCK AND MARTIN STELGES.

The statute, approved April 7th, 1887 (*Pamph. L.*, *p.* 138), which provides "that whenever, in any county of this state, certificates of indebtedness have been heretofore lawfully issued for the purpose of constructing or improving one or more roads or avenues running through or in such county, for the payment of which certificates such county was by law authorized to become obligated," such certificates shall be paid by that county, is held to be in contravention of article IV., section 7, paragraph 11 of the constitution, which provides that the legislature shall not pass a private, local or special law to regulate the internal affairs of a town or county.

---

On error to the Supreme Court.

For the plaintiff in error, *John A. McGrath* and *A. Q. Garretson.*

For the defendants in error, *Allan L. McDermott.*

155

The opinion of the court was delivered by

THE CHANCELLOR. By an act of the legislature, approved April 1st, 1869 (*Pamph. L., p.* 1080), commissioners were appointed and authorized to improve Paterson avenue, from the westerly line of the Paterson plank road to the Secaucus road, and the Secaucus road from Paterson avenue to Penhorne's creek, in the county of Hudson. The contemplated improvement was to extend from Hudson City, now a part of Jersey City, into the townships of North Bergen and West Hoboken, and for the distance of about one and a quarter miles. By a supplement to this act, approved March 11th, 1870 (*Pamph. L., p.* 809), the board of chosen freeholders of Hudson county was authorized, in anticipation of the collection of assessments for the cost of the improvement, to advance all money that should be required to complete the work. The board of freeholders having refused to make such advances, in 1871 (*Pamph. L., p.* 997) the legislature authorized the commissioners previously appointed to issue certificates of indebtedness, to be paid from moneys that should be collected from assessments for the improvements contemplated. By a further enactment, passed March 25th, 1872 (*Pamph. L., p.* 794), it was provided that the collector of Hudson county should countersign the certificates of indebtedness that might be issued during the progress of the work, provided he should be authorized to do so by the board of chosen freeholders of that county, and that thereupon the county should be obligated to pay the certificates at their maturity. The board of freeholders of Hudson county refused to give to the collector the authority thus required. After such refusal, the certificates of indebtedness hereinafter mentioned were issued.

The entire expense of the improvement authorized by the legislation referred to was $131,968.79. To provide for this expenditure a large number of certificates of indebtedness, and among them the instruments here sued upon, were issued. The statutes referred to authorized the assessment of the expense of the improvement upon lands specially benefited by it, in proportion to the benefit derived by such lands, and

provided that the commissioners appointed to make the improvement should also make the assessment, but that if their assessment should not be confirmed by the Court of Common Pleas of Hudson county, that that court should appoint other commissioners to make a new assessment. By an act approved April 8th, 1875 (*Pamph. L., p.* 519), after the issue of the instruments here in suit, authority was given to assess a portion of the expense of the improvement upon the county of Hudson, and it was subsequently determined that of the entire expense, $73,107.68 should be assessed upon the lands benefited by the improvement, and $58,861.11 should be assessed upon the county of Hudson, and the assessment was accordingly made by commissioners appointed by the Court of Common Pleas of Hudson county, after confirmation of an assessment made by the legislative commissioners had been denied.

The county resisted this charge upon it (*Freeholders of Hudson* v. *Road Commissioners,* 12 *Vroom* 83; *S. C. on error,* 13 *Id.* 608), and also its payment (*Road Commissioners* v. *Freeholders of Hudson,* 15 *Id.* 570 ; *S. C. on error,* 16 *Id.* 173), but was unsuccessful in both these contests, and consequently paid the amount which was assessed against it. Each certificate of indebtedness received its proportionate share of that payment.

The owners of property specially benefited by the improvement have not paid the assessment upon their lands. Several of them sued out writs of *certiorari* and removed the assessment against them respectively to the Supreme Court, and in each case thus commenced the assessment was set aside. One of these cases was removed to this court by writ of error, and in it the judgment of the Supreme Court was reversed, but in all the other cases the judgment of the Supreme Court remains hitherto unreversed.

In this position of affairs the legislature passed the act which was approved March 23d, 1883, and entitled "An act to make certain roads, constructed by commissioners under the authority of the legislature, county roads, and to provide for

the payment of the expense of constructing by the county, and for the mode of maintaining and repairing the same." *Pamph. L.* 1883, *p.* 225. By this law it was enacted that " whenever a road has been heretofore constructed by or under the supervision of the commissioners appointed under any act or acts of the legislature, * * * running in or through two or more cities, towns or townships, or through or in a city and one or more towns or townships in any county, and the cost of such improvement, under any act or acts of the legislature, has been assessed by commissioners appointed by some court of record, under acts authorizing a part of the expense to be assessed upon the property benefited, and part of the expense to be assessed upon the county in which said road shall lie, and where no provision is made by law for the maintenance and keeping in repair by the county of such a road," certificates of indebtedness issued in payment for the improvement should be paid by the county within which the road was situated.

Under this act the defendants in error here brought suit against the board of chosen freeholders of Hudson county for the amount remaining due upon their certificates of indebtedness. When that case was brought to this court (20 *Vroom* 228), the law of 1883 was held to be unconstitutional, the Chief Justice (Beasley), who delivered the opinion of the court, saying: "We think that this act is applicable to the county of Hudson alone, and can never be applied to any other locality, and is therefore plainly unconstitutional." In consequence of this opinion, the judgment that had been obtained by the defendants in error was reversed.

In 1887 (*Pamph. L., p.* 138), another statute was enacted, entitled "An act to provide for the payment of certificates of indebtedness, issued for the purpose of constructing or improving a road or roads in counties of this state."

This law provides "that whenever, in any county of this state, certificates of indebtedness have been heretofore lawfully issued for the purpose of constructing or improving one or more roads or avenues running through or in such county,

for the payment of which certificates such county was by law authorized to become obligated," such certificates shall be paid by that county. The defendants rely upon this statute to maintain their present suit, and the plaintiff in error assails it as being in contravention of that part of article IV., section 7, paragraph 11 of the constitution which provides that the legislature shall not pass a private, local or special law regulating the internal affairs of a town or county. The design of the legislation in question undoubtedly is to secure the payment of certain certificates of indebtedness. Those certificates are designated in the act by an incident in their history, which is, that the county now called upon to pay them at one time had authority to become obligated to do so. This circumstance not only is used to identify the certificates to be paid, but also serves as the basis of classification of the counties to which the act is to apply. The law does not embrace the payment of all certificates of indebtedness theretofore lawfully issued to pay for similar improvements, but it includes only those certificates of that kind which a county had authority to bind itself to pay. No substantial, natural or appropriate reason presents itself, or is suggested, for the distinction made in favor of certificates that a county might have undertaken to pay if it pleased, and against those which, although issued for similar improvements, and as much entitled to protection, it did not possess authority to assume and pay.

I fail to perceive what reasonable propriety there is for a distinction in legislation of this character between counties that once had authority to pay and counties that did not possess such authority. It is necessary to the constitutionality of the law under consideration that the appropriateness of the legislation to the class defined, and its inappropriateness to similar objects, from which it is distinguished, shall be apparent.

In *State* v. *Hammer*, 13 *Vroom* 435, Chief Justice Beasley said " that the true principle of classification requires something more than a mere designation by such characteristics as

will serve to classify, for the characteristics which will thus serve as the basis of classification must be of such a nature as to mark the object so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction having a reference to the subject matter of the proposed legislation between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

The principle thus lucidly stated was affirmed in the same case, upon error, in this court (15 *Vroom* 567), and has been repeatedly announced and applied in the courts of this state. *Van Riper* v. *Parsons*, 11 *Vroom* 1, 123 ; *Rutgers* v. *New Brunswick*, 13 *Id.* 51 ; *Ziegler* v. *Gaddis*, 15 *Id.* 363 ; *Anderson* v. *Trenton*, 13 *Id.* 486.

In Anderson *v.* Trenton, the basis of classification of cities was a minimum population, and the power sought to be conferred was to issue bonds to pay a floating debt, and it was held that the object of the law bore no such natural relation to the basis of classification adopted as to manifest its fitness. *Hightstown* v. *Glenn*, 18 *Vroom* 105 ; *Van Giesen* v. *Bloomfield, Id.* 442. In this case the object was to give a township power to light its streets at the expense of the general tax levy, and the statute was made applicable to cities and townships in which the streets had been lighted pursuant to legislative authority to such cities and townships, and Justice Van Syckel, in delivering the opinion of the court, remarked : "It does not appear why legislation enabling other townships to light lamp districts at the expense of the general tax levy would not be equally appropriate." *Clossen* v. *Trenton*, 19 *Vroom* 438, where the law prescribed that any city of more than fifteen thousand inhabitants may, by ordinance, provide for an excise department, but that the law shall not apply to a city then having a board of excise, nor to a city within which licenses were granted by a Court of Common Pleas, Justice Reed said : "The legislation is, in my judgment,

clearly special. There can be no reason suggested why cities with more than fifteen thousand inhabitants should have a system of granting licenses differing from that of cities with less population." *Randolph* v. *Wood*, 20 *Vroom* 85, where the provision was that there should be a councilman-at-large in cities of not less than ten thousand inhabitants, divided into not less than two nor more than three wards, and which then, by law, had twelve councilmen, Justice Knapp said that the act in question seemed to him to have chosen characteristics and incidents as marking a distinct class, of too special, restrictive and unimportant a character to give to the enactment the quality of a general law. *Gibbs* v. *Morgan*, 12 *Stew. Eq.* 126, where the statute provided that in all counties where county clerks were, at the passage of the act, paid by annual salary, the deputy clerk should receive the salary of $2,000 per annum, it was held that the fact that the clerk was paid a salary did not constitute an appropriate and reasonable basis of classification. *Ernst* v. *Morgan*, 12 *Stew. Eq.* 391, where the design of the statute was to provide for an assistant county clerk in counties of more than sixty thousand inhabitants, and in which the legal fees of the county clerks were paid for the use of the county, it was held that the basis of the classification did not mark a class peculiarly requiring exclusive legislation.

Before concluding reference to the adjudications, it appears to be proper to quote the language of Justice Magie, in *Long Branch* v. *Sloan*, 20 *Vroom* 356, which aptly states the principle that I apply in this case. He says (disclaiming the purpose of announcing a rule that shall be used beyond the case then before him): "That a determination whether or not a given law is general will proceed from a consideration both of the purpose of the act and the objects on which it is intended to operate. If these objects are distinguished from others by characteristics evincing a peculiar relation to the legislative purpose, and showing the legislation to be reasonably appropriate to the former and inappropriate to the latter, the objects will be considered, as respects such legislation, to

be a class by themselves, and legislation affecting such a class to be general. But if the characteristics used to distinguish the objects to which the legislation applies from others be not germane to the legislative purpose, or do not indicate some reasonable appropriateness in its application, or if objects with similar characteristics and like relation to the legislative purpose have been excluded from the operation of the law, then the classification would be incomplete and faulty, and the legislation not general, but local and special."

It appears to me that when the test so clearly defined and settled by these adjudications is applied to the case at hand, it becomes irresistibly clear that that which is relied upon in the act now questioned as a basis for classification, is in reality a mere specification, and that the law is not general, but local and special.

The judgment should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, PATERSON, WHITAKER.    15.