[File No. 6589.]

THE STATE OF NORTH DAKOTA EX REL. GEORGE ECK-
ROTH and Margaretha Eckroth, Appellants, v. CARL BORGE,
J. R. Fitzsimmons, Dave Gibson, J. O. McFall, H. C. Schulte,
Alice Tschida and F. G. Weinrich, Members of the County Wel-
fare Board of Morton County, North Dakota, and Frank Milhol-
lan, F. F. Allmaras, Frank J. Webb, R. M. Stangler, Rilie R.
Morgan, Jack A. Patterson and Lee R. Herring, Members of the
Public Welfare Board of North Dakota, Respondents.

(283 N. W. 521.)

2

Opinion filed January 16, 1939.

*Robert Birdzell,* for appellants.

*James M. Hanley, Jr.,* and *John E. Williams,* for respondents.

4

*William Langer,* Governor, and *Alvin C. Strutz,* Attorney General, amici curiæ.

MORRIS, J. The plaintiffs, George Eckroth and Margaretha Eckroth, husband and wife, petitioned the district court of Morton county for a writ of mandamus directing the members of the Public Welfare Board of North Dakota to grant and pay to each of the petitioners from the North Dakota Old Age Assistance Fund an amount not less than $30 per month, under the provisions of chapter 211, N. D. Session Laws 1937, as amended by the initiated measure approved at the general election held on November 8, 1937. The trial court dismissed the petition and the plaintiffs appeal. The determination of the controversy involves the consideration of chapter 211, as amended, which is known as the Old Age Assistance Act.

The petition alleges that the plaintiffs are qualified recipients of assistance under the Old Age Assistance Act, and that prior to December 8, 1938, the effective date of the amendment, George Eckroth was receiving from the North Dakota Old Age Assistance Fund the sum of $20 per month, and Margaretha Eckroth was receiving the sum of $17 per month; that they have no other money income or available sources of such income; that they own no marketable, personal, or real property other than necessary clothing and household goods, and a dwelling worth $2,000 which they occupy as a home; that they are entitled to and have applied for increases in the amount of assistance to at least $30 per month each.

Chapter 211, N. D. Session Laws 1937, is in part entitled "An Act to promote the public welfare by providing for public assistance to aged persons in need."

Section 1 contains definitions of terms used in the Act including, " 'assistance' means money payments to aged persons in need as provided in this Act."

Section 2 provides for eligibility, and says "Eligibility for Assistance to the Needy Aged. Assistance shall be granted under this Act to any person who:

"(a) Is a citizen of the United States;

"(b) Has attained the age of sixty-five years, provided, however, that if at any time the laws of the United States shall authorize funds for old age assistance granted by the United States to the state to be paid to a person less than sixty-five years of age, then the State Agency shall have authority to reduce the age of an applicant for old age assistance to such lesser age;

"(c) Has resided in North Dakota for at least five years during the nine years immediately preceding the application for old age assistance, and has resided therein continuously for one year immediately preceding application;

"(d) Has not sufficient income or other resources to provide a reasonable subsistence compatible with decency and health;

"(e) Is not an inmate of, or being maintained by, any municipal, State or National institution at the time of receiving assistance;

"(f) Has no child or other relative of sufficient financial ability to support the applicant and responsible under the law for the support of the applicant;

"(g) Has not at any time before or after making application for old age assistance made an assignment or transfer of property for the purpose of rendering himself or herself eligible for old age assistance under this plan."

Section 3 deals with the amount of assistance. The original section reads as follows: "Amount of Assistance. The amount of assistance which any person shall receive shall be determined with due regard to the resources and necessary expenditures of the individual and the conditions existing in each case and in accordance with such rules, regulations, and directions as the State Agency may find it necessary to prescribe. The amount of assistance shall be sufficient, when added to all other income and support of the recipient, to provide such person with a reasonable subsistence compatible with decency and health, but shall not exceed a maximum of Thirty Dollars ($30.00) per month. Provided, however, that if at any time the amounts received or to be received by this State from the United States for old age assistance shall

be more than $15.00 per month for each person entitled to the full monthly compensation of $30.00 per month under this Act, then the State Agency shall have authority to increase such maximum amount of old age assistance in an amount corresponding to the increase that such increase in the amount received from the Federal Government will permit."

Section 3 was amended and re-enacted by the adoption of an initiated measure, the full text and title of which is as follows:

"An Act amending and re-enacting § 3 of chapter 211 of the Session Laws of North Dakota for 1937, and providing that the amount of assistance which any person shall receive shall be sufficient when added to all other income of recipient to provide such person with a reasonable subsistence compatible with decency and health but shall not be less than a minimum of forty dollars per month except that it shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family and each county shall reimburse the State Agency for fifteen per cent of the amount expended for such assistance in such county in excess of the amount provided by the Federal Government and repealing all Acts and parts of Acts in conflict herewith.

Be It Enacted by the People of the State of North Dakota:

Section 3 of chapter 211 of the Session Laws of North Dakota for 1937, is hereby amended and re-enacted to read as follows:

"Section 3. The Amount of Assistance. The amount of assistance which any person shall receive shall be determined with due regard to the resources and necessary expenditures of the individual and the conditions existing in each case and in accordance with such rules, regulations and directions as the State Agency may find it necessary to prescribe. The amount of assistance shall be sufficient when added to all other income of the recipient to provide such person with a reasonable subsistence compatible with decency and health but shall not be less than a minimum of forty dollars per month except that it shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family, and each county shall reimburse the State Agency for fifteen per cent of the amount expended for such assistance in such county in excess of the amount provided by the Federal Government. Provided, that if at any time

the amount received or to be received by this state from the United States for Old Age Assistance shall be more than fifteen dollars per month for each person entitled to the full monthly compensation of forty dollars per month under this Act, then the State Agency shall have authority to increase such minimum amount of Old Age Assist- ance in an amount corresponding to the increase, that such increase in the amount received from the Federal Government will permit and repealing all acts or parts of acts in conflict herewith."

Section 3 is the only section of the Old Age Assistance Act men- tioned in the initiated measure.

Section 5 of the original Act deals with applications for assistance and provides, "Such application shall contain a statement of the amount of property, both personal and real which the applicant owns or in which he has an interest, and of all income which he may have at the time of the filing of the application, and such other information as may be prescribed by the State Agency."

Section 6 authorizes the investigation of applications and says, "In determining the amount of assistance due account shall be taken of any income and property of the applicant and any support which the appli- cant may receive from other sources."

Section 12 establishes "The North Dakota Old Age Assistance Fund" and directs that all money received by the Public Welfare Board of North Dakota for old age assistance purposes from the state, the counties, the United States, or any other source, shall be placed in such fund.

Section 15 provides that on the death of a recipient of old age assist- ance, funeral expenses not to exceed $75 shall be allowed and paid if the estate of the decedent is insufficient to defray such expenses and the persons legally responsible for the support of the decedent are un- able to pay them.

Section 19 provides, "Recovery from a Recipient. If, at any time during the continuation of assistance, the recipient becomes the owner of any property or income in excess of the amount stated in the appli- cation provided for in § 5 of this Act, it shall be the duty of the re- cipient immediately to notify the State Agency of the receipt or pos- session of such property or income and the State Agency may, after investigation, either cancel the assistance or alter the amount thereof

in accordance with the circumstances. Any assistance paid after the recipient has come into possession of such property or income, and in excess of his needs, shall be recoverable by the state from the estate of the recipient."

Section 20 provides for a cause of action against anyone liable for the support and care of the recipient of old age assistance who is able to care for and support such recipient but fails and refuses to do so.

Section 22 deals with the transfer of certain property of the applicant in trust as security for old age assistance payments, and provides: "An applicant for old age assistance shall in no case be required to transfer a homestead occupied by him as such unless he or she desires to do so."

Referring to the initiated amendment of § 3, we find that the amount of assistance now provided "shall be sufficient when added to all other income of the recipient to provide such person with a reasonable subsistence compatible with decency and health but shall not be less than a minimum of forty dollars per month except that it shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family, and each county shall reimburse the State Agency for fifteen per cent of the amount expended for such assistance in such county in excess of the amount provided by the Federal Government."

The words "and support" which appeared in the original Act have been omitted and the maximum of $30 has been changed to a minimum of $40. The plaintiffs contend that they have no income and that they are entitled to at least the minimum provided by the initiated measure.

The defendants contend that the initiated amendment is violative of § 185 of the Constitution of the state of North Dakota, and is, therefore, unconstitutional and void. Both the Attorney General and Hon. William Langer, Governor, appeared in person and filed briefs as amici curiæ. They contend that the amendment should be construed to fix by law a minimum subsistence compatible with decency and health and not the minimum amount of the payments that are to be made. In the Governor's brief it is argued that, "If we give the measure the proper construction, namely, that the $40 a month means the total which the recipient receives from his income, or power to produce income, coupled with what he receives from the Welfare Board,

then there cannot be any question about the constitutionality of the measure."

The trial court held that the initiated measure under consideration was repugnant to and within the prohibition of § 185 of the Constitution of the state of North Dakota, and, therefore, unconstitutional and void. Section 185 provides, "The state, any county or city, may make internal improvements and may.engage in any industry, enterprise or business, not prohibited by article 20 of the Constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation." Thus is presented the question as to whether the assistance provided by chapter 211, as amended by the initiated measure constitutes "reasonable support of the poor" within the meaning of § 185 of the Constitution. This question must be determined in accordance with the rules of statutory construction and the principles of constitutional law.

Chapter 211 was enacted by the legislative assembly. The amendment to § 3 thereof was enacted by the people through the medium of the initiative under the specific provision of § 25 of the Constitution which declares that the legislative power of the state shall be vested in a legislature with power reserved to the people to propose measures and to enact or reject them at the polls. When the people so act, they perform legislative functions.and the constitutionality of their acts is determined under the same general principles as those applicable to the acts of the legislative assembly. "Under this constitutional provision the legislative assembly and the people are in effect co-ordinate legislative bodies with co-extensive legislative power; a law enacted by one has no superior position as a rule of conduct over one enacted by the other; a law enacted by one is subject to the same rules of construction and the same tests of constitutionality as one enacted by the other." State v. Houge, 67 N. D. 251, 271 N. W. 677. The principle is elementary that where there are two possible interpretations of a statute by one of which the statute would be unconstitutional and by the other it would be valid, the court will adopt the construction which will uphold it. This principle has been followed in a long line of decisions

in this state. Wood v. Byrne, 60 N. D. 1, 232 N. W. 303; E. J. Lander & Co. v. Deemy, 46 N. D. 273, 176 N. W. 922; State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583; Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838; Erskine v. Nelson County, 4 N. D. 66, 58 N. W. 348, 27 L.R.A. 696.

In the first paragraph of the syllabus of State ex rel. Sathre v. Board of University & School Lands, 65 N. D. 687, 262 N. W. 60, we said, "Every legislative enactment is presumed to be constitutional; and this presumption is conclusive unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States."

In construing statutes courts seek not only to uphold their constitutionality but also endeavor to so construe them as to effectuate the legislative purpose which prompted their enactment even though the construction which is thus arrived at does not appear to be as natural as some other. 11 Am. Jur. 725, Constitutional Law, § 97; Ledegar v. Bockoven, 77 Okla. 58, 185 P. 1097; Re Tillman, 84 S. C. 552, 66 S. E. 1049, 26 L.R.A.(N.S.) 781; Winters v. Duluth, 82 Minn. 127, 84 N. W. 788.

The title of chapter 211 declares it to be "An Act to promote the public welfare by providing for public assistance to aged persons in need;" thereby stating the purpose of the Act to be the assistance of those persons in need or want who might qualify under eligibility provisions of the Act. These provisions are set out in § 2 above quoted. No one who did not come within them was entitled to the benefits of the original Act. Need was one of the basic qualifications of an applicant and it was the element of need that brought the Act within the exception of § 185 of the Constitution which prohibits donations except for the reasonable support of the poor. Chapter 211 is not a pension act. It does not provide that one shall be entitled to the benefits thereof based on age alone. Pensions that are mere gratuities and not rewards for public service rendered may not be granted. When we examine the initiated amendment to determine its proper construction we must bear in mind that if it so alters the Old Age Assistance Act as to remove need as one of the basic qualifications of a recipient of assistance, it removes from the Act that qualification upon which its

constitutionality depends by rendering the assistance available at least to some who are not in need. Assistance to those not in need would clearly be a donation other than for "the reasonable support of the poor" and in direct conflict with the specific prohibition of § 185. Unless the amendment can be so construed as to leave unaltered the qualification of need contained in the original Act, the amendment must fall.

We will first consider the omission of the words "and support" from the sentence dealing with the amount of assistance. Was it the intention of those enacting the amendment to omit from consideration in determining the need of the applicant any support which he or she might receive through donations or contributions, voluntary or otherwise, which the applicant might receive from relatives responsible under the law for the support of the applicant, or from other sources. It may be argued that income is not synonymous with support; that the former deals with gain resulting from capital or labor such as wages, salary, interest, profit, and rent, while the latter embraces anything that furnishes a means of livelihood. Cases dealing with the definition of income as used in connection with income tax statutes are of no assistance in construing this language, for the Old Age Assistance Act deals with an entirely different subject than the income tax statutes. Clearly it would be absurd to hold that under the Old Age Assistance Act sums received from annuities paid from capital, alimony and gifts or bequests received through wills or trusts would not be considered as income of an applicant, although these items are usually not considered as income of the recipient under the tax statutes.

In a case entitled Opinion of Justices, 85 N. H. 562, 154 A. 217, the court considered the constitutionality of a proposed Old Age Assistance Act similar in its general structure to the North Dakota Act. The proposed Act contained the following section dealing with the amount of assistance: "The amount of aid to which any person shall be entitled shall be fixed with due regard to the condition existing in each case, but in no event shall it exceed, when added to the income of the applicant from all other sources, the sum of seven dollars and fifty cents per week." It will be noted that the word support was not used. The New Hampshire Constitution prohibited the granting of pensions except in consideration of actual services and forbade taxation for pri-

vate purposes. The court held the proposed Act constitutional as against objections based upon these provisions, although it held the Act unconstitutional in that it entrusted to the probate courts the administration of the system which the Act set up and thereby gave to the judicial branch of the government authority belonging to the executive branch.

Although the amendment omits the word support from § 3 no change was made in § 2 dealing with eligibility which requires as a qualification that the applicant "has no child or other relative of sufficient financial ability to support the applicant and responsible under the law for the support of the applicant." No change is made in § 20 which provides for a cause of action against relatives able and liable for the care and support of a recipient of old age assistance. The amendment repeals all acts and parts of acts in conflict therewith, but it does not necessarily follow that it was intended by the omission of the word support in the amendment, to repeal by implication other parts of the Act, particularly, when those parts deal with fundamentals lying close to the question of constitutionality. Either the omission of the word support changes drastically the standard of eligibility by permitting persons to become eligible who have relatives legally responsible for their support and able to render assistance, or it is an inadvertent omission which has no bearing upon eligibility of applicants or the amount of assistance which they are entitled to receive, because the amendment still provides for taking into consideration all of the other income of the recipient in determining what is a reasonable subsistence compatible with decency and health. It is the duty of this court, if possible, to construe the amendment so that it fits reasonably into the general purpose and scheme of the act of which it has become a part to the end that a constitutional purpose may be effectuated. The elimination of the word support by the amendment does not change the basis of eligibility. It still leaves the actual need of the applicant an element to be considered in determining the amount of assistance.

We now pass to the next problem presented by the wording of the amendment which provides that the amount of assistance shall be sufficient "to provide such person with a reasonable subsistence compatible with decency and health but shall not be less than a minimum of forty dollars per month except that it shall not be less than a minimum

of thirty dollars per month for each recipient where there is more than one recipient in the family." The act prior to the amendment declared that "the amount of assistance shall be sufficient . . . to provide such person with a reasonable subsistence compatible with decency and health, but shall not exceed a maximum of Thirty Dollars ($30) per month." Again we are confronted with the question as to whether the amendment eliminates need as a basis for determining the amount of assistance so as to provide a minimum payment of $40 (or $30) per month to all needy aged regardless of whether other subsistence is available. In other words, does the amendment provide that all needy persons who have attained the age of sixty-five years shall be entitled either to assistance payments of the minimum amount fixed by the amendment or nothing. The amendment is undoubtedly susceptible of that construction. If susceptible of no other, it is in conflict with § 185 of the Constitution, and, therefore, unconstitutional and void. That, however, is not the only construction that may be placed upon the wording involved. A comparison of the amendment with the original section discloses that under the original Act the standard fixed by the legislature to be used by the welfare agencies in determining the amount of assistance was basicly that which would provide the recipient with a reasonable subsistence compatible with decency and health. The amendment did not destroy this standard. It removed the statutory maximum and provided instead a statutory minimum which the people by adopting the amendment declared to be minimum amounts which would maintain needy aged compatible with decency and health. The unamended sections of the Act indicate that its purpose is to furnish assistance on the basis of need. This basis also permeates the amendment which provides that, "The amount of assistance which any person shall receive shall be determined with due regard to the resources and necessary expenditures of the individual and the conditions existing in each case." Despite its grammatical structure we believe the amendment should be construed so as to carry out this purpose and sustain its constitutionality.

"That the court in construing a statute must give effect, if possible, to the spirit and intent of the act, so as to effectuate the object sought to be accomplished by the legislature, even though such construction may not seem warranted by the strict letter of its language, is well set-

tled. Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 49 N. W. 318; Intoxicating-Liquor Cases, 25 Kan. 751, 37 Am. Rep. 284; Boyle v. Northwestern Mut. Relief Asso. 95 Wis. 312, 70 N. W. 351; 26 Am. & Eng. Enc. Law, 602, and cases cited. In Vermont Loan & T. Co. v. Whithed, 2 N. D., at page 101, 49 N. W. 323, Judge Bartholomew, in disposing of the question of the power of the court to place a limitation upon the language employed by the legislature in order to give effect to the evident object sought to be accomplished by the act, quoted approvingly from the decisions of other courts as follows: 'In construing an instrument, the true intention of the framers must be arrived at, if possible, and, when necessary, the strict letter of the act, instrument or law, must yield to the manifest intent.' 'Effects and consequences of a construction are to be considered, and when, from a literal interpretation, an effect would follow contrary to the whole intent and spirit of the statute, the intent and not the literal meaning must be regarded.' 'Whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute.' " State ex rel. Flaherty v. Hanson, 16 N. D. 347, 113 N. W. 371.

We hold that the minimum provided by the amendment establishes a standard by which is measured "a reasonable subsistence compatible with decency and health," and it does not establish minimum standards of payment regardless of the income of the recipient. We also hold that the term income as used in the Old Age Assistance Act includes all sources of livelihood. As thus construed the initiated amendment to chapter 211, N. D. Session Laws 1937, does not contravene § 185 of the Constitution.

The next question is whether the legislature or the people acting in a legislative capacity have the power to fix by statute a minimum standard for determining what constitutes a reasonable subsistence compatible with decency and health. In the absence of a constitutional provision such as contained in § 185, the state would have the inherent power to support the poor. State v. Nelson County, 1 N. D. 88, 45 N. W. 33, 8 L.R.A. 283, 26 Am. St. Rep. 609. The support of the poor is a proper exercise of the police power. Re Opinion of the Justices, supra. In order "to promote the public welfare" by providing for the needy aged, the legislature by chapter 211, created the agencies and

provided the regulations for carrying out its humane and constitutional purpose. It unquestionably had the power to and did provide the standards by which eligibility for assistance should be determined. It is suggested that the legislative authority of the state cannot establish a minimum amount as a measure of the subsistence that is necessary to provide for the needy aged and that the amount must be left to the determination of the welfare agencies in each individual case. This contention is unsound. If the state, in the interest of the public welfare, has the power, as it does, to provide assistance and define eligibility, it follows that it has the further power to determine by legislative action a standard by which its agencies will measure the amount of income which is necessary in order to furnish the needy aged with a reasonable subsistence compatible with decency and health.

Having determined the question of legislative power to fix a minimum standard, we next consider whether the standard that has been fixed is within the reasonable exercise of that power. The adoption of one amount rather than another is a legislative and not a judicial choice. The question is not whether the court would prefer a different standard than that fixed by the legislature, but whether it is possible to say that the choice of the standard fixed by the legislature is without rational basis. South Carolina State Highway Dept. v. Barnwell Bros. 303 U. S. 177, 82 L. ed. 734, 58 S. Ct. 510. Examining the standard of $40 per month for one recipient and $30 where there is more than one recipient of assistance in a family, we cannot say that it is so unreasonable as a minimum measure of subsistence compatible with decency and health that it transcends the legislative power and violates the Constitution.

In this proceeding the plaintiffs seek mandatory relief in the form of a writ directing that there be granted to each of them from the North Dakota Old Age Assistance Fund money payments of not less than $30 per month. It appears that the plaintiffs now occupy a homestead, the rental value of which constitutes income but the amount thereof is not disclosed by the record. Mandatory relief cannot be granted upon this record for in order to entitle the plaintiffs to such relief they must show a clear legal right to the performance of the act or acts which they seek to coerce. State ex rel. Minot v. Willis, 18 N. D. 76, 118 N. W. 820; Cary v. Morton County, 57 N. D. 700, 223 N. W. 928.

The amount of plaintiffs' income not being shown, it is uncertain what payments, if any, they are entitled to receive from the Old Age Assistance Fund, and mandatory relief cannot be granted.

The Attorney General has also argued that a writ of mandamus cannot issue because no appropriation is available to pay the increase in assistance provided by the amendment. Since we have already decided that a writ cannot issue, it is unnecessary to determine the correctness of this contention.

Affirmed.

BURR and CHRISTIANSON, JJ., and HOLT, Dist. J., concur.

SATHRE, J., did not participate, HON. DANIEL B. HOLT, Judge of First Judicial District, sitting in his stead.

NUESSLE, Ch. J. (specially concurring). I concur in the result reached in the foregoing opinion to the extent that it is held therein that the plaintiffs have not shown the clear legal right necessary to entitle them to the mandatory relief they seek; but I cannot agree with all of the reasoning by which that result is attained.

My primary disagreement is with respect to the construction and effect to be given the amendment adopted on November 8th, 1938. It seems to me but one meaning can be given to the words of this amendment and that is that where a needy aged person is entitled to assistance payments the minimum monthly amount of such payment is forty dollars regardless of the income the recipient may otherwise have. Though I subscribe without reservation to every canon of statutory construction stated in the opinion, I cannot read any other meaning into the words of the amendment, which are that "the amount of assistance shall be sufficient . . . to provide such person (the applicant) with a reasonable subsistence compatible with decency and health *but shall not be less than a minimum of forty dollars per month* except that it shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family." The Old Age Assistance Act prior to the amendment provided that "The amount of assistance shall be sufficient . . . to provide such person with a reasonable subsistence compatible with decency and health, but

shall not exceed a maximum of thirty dollars per month." This act has always and everywhere been construed to limit the amount of assistance paid by the state's welfare agencies to thirty dollars per month regardless of the needs of the applicant, but that the amount to be paid where the need for such amount exists is not to be lessened by the income the recipient has from other sources. That is, the need above such income determines the amount to be paid up to the statutory maximum. For example, though a recipient have an income measured in dollars of one hundred dollars per month, if his need require more he is entitled to it but he cannot thus receive more than thirty dollars. Now the amendment adopted exactly the language of the original enactment except that it substituted for the words "but shall not exceed a maximum of thirty dollars per month" the words "but shall not be less than a minimum of forty dollars per month." That is, the clear purport of the amendment is to remove the maximum limit altogether and to fix a minimum of assistance that shall be paid where there is need regardless of the amount required to meet that need. This construction, it seems to me, is inescapable and the remainder of the clause above quoted confirms it, for it reads: "Except that *it* shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family." Clearly the antecedent of the pronoun "it" thus used is the "amount of assistance." Furthermore, the title of the amendatory act affords further confirmation to the same effect. It reads: "An act amending and re-enacting § 3 of chapter 211 of the Session Laws of North Dakota for 1937, and providing that *the amount of assistance which any person shall receive* shall be sufficient when added to all other income of recipient to provide such person with a reasonable subsistence compatible with decency and health but *shall not be less than a minimum of forty dollars* per month except that *it* shall not be less than a minimum of thirty dollars per month for each recipient where there is more than one recipient in a family. . . ." Clearly the clause "but shall not be less than a minimum of forty dollars" refers back to the amount of assistance just as the pronoun "it" refers back to the amount of assistance. Thus construed the amendment in question must be held unconstitutional and void consistent with what is said in the opinion with respect to the construction and effect of § 185 of the Constitution. Accordingly, it would

follow that the plaintiffs are not entitled to the mandatory relief which they seek.

Taking this view of the case it becomes unnecessary to pass upon the propositions covered by paragraphs eight and nine of the syllabus and I refrain from expressing any opinion with respect to those propositions.