UNITED STATES *v.* RECTOR, ETC., OF THE CHURCH OF THE HOLY TRINITY.

*(Circuit Court, S. D. New York.  May 21, 1888.)*

1. IMMIGRATION—PERSONS UNDER CONTRACT TO LABOR—CLERGYMEN.

The statute entitled "An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States" prohibits the encouragement of migration of aliens under contract or agreement previously made "to perform labor or service of any kind in the United States," imposes a penalty on any person or corporation encouraging migration of an alien under a contract or agreement previously made "to perform labor or service of any kind," and contains a proviso exempting from its provisions "professional actors, artists, lecturers, or singers." The defendant, a religious corporation, engaged an alien residing in England to come here and take charge of its church as pastor. *Held,* that the corporation was liable to the penalty prescribed.

2. SAME.

The words "labor or service" of any kind cannot be given a restricted meaning, so as to exclude the vocation of a minister of the gospel, in view of the proviso, which plainly signifies that they are intended to apply to all who labor in any professional callings not specially exempted.

At Law.   On demurrer to complaint.

*Seaman Miller,* for the demurrer.

*Stephen A. Walker,* U. S. Atty., *contra.*

WALLACE, J.   This suit is brought to recover a penalty of $1,000 imposed by the act of congress of February 26, 1885, (23 St. at Large, 332,)

upon every person or corporation offending against its provisions by knowingly encouraging the migration of any alien into the United States "to perform labor or service of any kind under contract or agreement, express or implied," previously made with such alien. The defendant, a religious corporation, engaged one Warren, an alien residing in England, to come here and take charge of its church as a pastor. The act makes it the duty of the United States district attorney to bring suit to enforce the penalty prescribed. The demurrer interposed to the complaint raises the single question whether such a contract as was made in this case is within the terms of the act. In other words, the question is whether congress intended to prohibit the migration here of an alien who comes pursuant to a contract with a religious society to perform the functions of a minister of the gospel, and to subject to the penalty the religious society making the contract and encouraging the migration of the alien minister. The act is entitled "An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States." It was, no doubt, primarily the object of the act to prohibit the introduction of assisted immigrants, brought here under contracts previously made by corporations and capitalists to prepay their passage and obtain their services at low wages for limited periods of time. It was a measure introduced and advocated by the trades union and labor associations, designed to shield the interests represented by such organizations from the effects of the competition in the labor market of foreigners brought here under contracts having a tendency to stimulate immigration and reduce the rates of wages. Except from the language of the statute there is no reason to suppose a contract like the present to be within the evils which the law was designed to suppress; and, indeed, it would not be indulging a violent supposition to assume that no legislative body in this country would have advisedly enacted a law framed so as to cover a case like the present. Nevertheless, where the terms of a statute are plain, unambiguous, and explicit, the courts are not at liberty to go outside of the language to search for a meaning which it does not reasonably bear in the effort to ascertain and give effect to what may be imagined to have been or not to have been the intention of congress. Whenever the will of congress is declared in ample and unequivocal language, that will must be absolutely followed, and it is not admissible to resort to speculations of policy, nor even to the views of members of congress in debate, to find reasons to control or modify the statute. *U. S.* v. *Railroad Co.*, 91 U. S. 72. If it were permissible to narrow the provisions of the act to correspond with the purport of the title, and restrain its operation to cases in which the alien is assisted to come here under contract "to perform labor," there might be room for interpretation; and the restricted meaning might possibly be given to the word "labor" which signifies the manual work of the laborer, as distinguished from the work of the skilled artisan, or the professional man. But no rule in the construction of statutes is more familiar than the one to the effect that the title cannot be used to extend or restrain positive provisions in the body of the act. In *Had-*

*den* v. *Collector*, 5 Wall. 107, it is said: "The title of an act furnishes little aid in the construction of its provisions." The encouragement of migration prohibited by the first section is of aliens under contract or agreement previously made "to perform labor or service of any kind in the United States." The contracts which are declared to be void by the second section are contracts "having reference to the performance of labor or service by any person in the United States" previous to the migration of the alien. The penalty imposed by the third section is imposed on the person or corporation encouraging the migration of the alien under a contract or agreement previously made "to perform labor or service of any kind." No more comprehensive terms could have been employed to include every conceivable kind of labor or avocation, whether of the hand or brain, in the class of prohibited contracts; and, as if to emphasize and make more explicit the intention that the words "labor or service" should not be taken in any restricted sense, they are followed by the words "of any kind." Every kind of industry, and every employment, manual or intellectual, is embraced within the language used. If it were possible to import a narrower meaning than the natural and ordinary one to the language of these sections, the terms of the fifth section would forbid the attempt. That section is a proviso withdrawing from the operation of the act several classes of persons and contracts. Foreigners residing here temporarily, who may engage private secretaries; persons desirous of establishing a new industry not then existing in the United States, who employ skilled workmen therein; domestic servants; and a limited professional class, are thereby exempted from its provisions. The last clause of the proviso is: "Nor shall the provisions of this act apply to professional actors, artists, lecturers, or singers, nor to persons employed strictly as personal or domestic servants." If, without this exemption, the act would apply to this class of persons, because such persons come here under contracts for labor or service, then clearly it must apply to ministers, lawyers, surgeons, architects, and all others who labor in any professional calling. Unless congress supposed the act to apply to the excepted classes, there was no necessity for the proviso. The office of a proviso is generally to restrain an enacting clause, and to except something which would otherwise have been within it. *Wayman* v. *Southard*, 10 Wheat. 30; *Minis* v. *U S.*, 15 Pet. 423. In the language of the authorities: "A proviso carves special exemptions only out of the enacting clauses." *U. S.* v. *Dickson*, 15 Pet. 165; *Ryan* v. *Carter*, 93 U. S. 83. Giving effect to this well-settled rule of statutory interpretation, the proviso is equivalent to a declaration that contracts to perform professional services except those of actors, artists, lecturers, or singers, are within the prohibition of the preceding sections.

The argument based upon the fourth section of the act has not been overlooked. That section subjects to fine and imprisonment any master of a vessel who knowingly brings within the United States any alien "laborer, mechanic, or artisan," who has previously entered into any contract to perform labor or service in the United States. This section is wholly independent of the others, and the difference in the persons de-

scribed may reasonably be referred to an intention to mitigate the severity of the act in its application to masters of vessels. The demurrer is overruled.